*1212
 
 STUART, Justice.
 

 Steven R. Sears initiated an election contest in the Shelby Circuit Court alleging that Ben McCrory was not eligible to hold the office of mayor of Montevallo to which he was elected because, Sears alleged, McCrory had failed to comply with the reporting and disclosure requirements of the Fair Campaign Practices Act, § 17-5-1 et seq., Ala.Code 1975 (“the FCPA”). The trial court entered a summary judgment in favor of McCrory, and Sears appeals. We affirm.
 

 I.
 

 Sears, McCrory, and Roger Wheeler were candidates in the Montevallo mayoral election held on August 26, 2008. As candidates for a local elected office, they were required under the FCPA to file periodic financial-disclosure reports with the local judge of probate detailing both campaign contributions received and campaign expenditures made. At all times relevant to this action, § 17 — 5—8(a)(1), Ala.Code 1975, specifically required that such reports be filed “[bjetween 50 and 45 days before and between 10 and 5 days before the date of [the] election.”
 
 [1]
 
 Section 17-5-8(c) further provides that “[e]ach report under this section shall disclose”:
 

 “(1) The amount of cash or other assets on hand at the beginning of the reporting period and forward until the end of that reporting period and disbursements made from same.
 

 “(2) The identification of each person who has made contributions to such committee or candidate within the calendar year in an aggregate amount greater than one hundred dollars ($100), together with the amount and date of all such contributions; provided, however, in the case of a political action committee identification shall mean the name and city of residence of each person who has made contributions within the calendar year in an aggregate amount greater than one hundred dollars ($100).
 

 “(3) The total amount of other contributions received during the calendar year but not reported under subdivision (c)(2) of this section.
 

 “(4) Each loan to or from any person within the calendar year in an aggregate amount greater than one hundred dollars ($100), together with the identification of the lender, the identification of the endorsers, or guarantors, if any, and the date and amount of such loans.
 

 “(5) The total amount of receipts from any other source during such calendar year.
 

 “(6) The grand total of all receipts by or for such committee during the calendar year.
 

 “(7) The identification of each person to whom expenditures have been made by or on behalf of such committee or elected official within the calendar year in an aggregate amount greater than one hundred dollars ($100), the amount, date, and purpose of each such expenditure, and, if applicable, the designation of each constitutional amendment or other proposition with respect to which an expenditure was made.
 

 “(8) The identification of each person to whom an expenditure for personal services, salaries, and reimbursed expenses greater than one hundred dollars ($100) has been made, and which is not otherwise reported or exempted from the provisions of this chapter, including
 
 *1213
 
 the amount, date, and purpose of such expenditure.
 

 “(9) The grand total of all expenditures made by such committee or elected official during the calendar year.
 

 “(10) The amount and nature of debts and obligations owed by or to the committee or elected official, together with a statement as to the circumstances and conditions under which any such debt or obligation was extinguished and the consideration therefor.”
 

 Finally, § 17 — 5—8(d) also requires that each of the above-described reports be signed by the candidate and accompanied by the candidate’s sworn affidavit “setting forth in substance that such report is to the best of his or her knowledge and belief in all respects true and complete, and, if made by a candidate, that he or she has not received any contributions or made any expenditures which are not set forth and covered by such report.”
 

 Between 50 and 45 days before the August 26, 2008, mayoral election, Sears, McCrory, and Wheeler each filed waivers stating that they were exempt from filing the then due financial-disclosure reports mandated by § 17-5-8 because their campaigns had not reached the minimum filing threshold. See § 17-5-2(a)(l), Ala.Code 1975 (stating that no person shall be considered a candidate for a local elected office within the meaning of the FCPA until he or she has either received contributions or made expenditures exceeding $1,000). The next disclosure reports were due to be filed between 10 and 5 days before the August 26 election, or between August 16 and August 21. There is no dispute that Sears, McCrory, and Wheeler all filed some reports within that time period, and the sufficiency of the reports filed by Sears and Wheeler has not been questioned. However, the gravamen of Sears’s claim against McCrory is that the various reports filed by McCrory both within and outside that time period were not sufficiently complete and/or timely so as to comply with the between-10-and-5-days’ reporting requirement of the FCPA. Specifically, McCrory filed the following reports with the probate court between August 15 and September 8:
 

 1. On August 15, McCrory filed a two-page report with the probate court. The first page was the official “Appointment of Principal Campaign Committee” form used to show compliance with § 17-5-4, Ala.Code 1975, and which McCrory had previously filed.
 
 [2]
 
 At the bottom of this form, McCrory signed a statement affirming that “to the best of my knowledge and belief ... the information contained herein is true and correct.” The second page was the official “Form 2” used to list contributions received by candidates. It indicated that McCrory’s campaign had received only two contributions — $100 on July 18, 2008, and $1,000 on July 20, 2008.
 

 2. On August 19, McCrory filed three more pages with the probate court. The first page was another signed
 
 *1214
 
 Appointment of Principal Campaign Committee form, and the next two pages were another Form 2 report again listing the two contributions totaling $1,100 from the August 15 report, as well as an additional 13 contributions received between July 25, 2008, and August 7, 2008, totaling $2,160.
 

 3. On August 22 — four days before the election and one day after the filing deadline for the between-10- and-5-days report — McCrory filed three more pages with the probate court. The first page was another signed Appointment of Principal Campaign Committee form. The second page was the official “Form 3” used to list in-kind contributions received by candidates. It indicated that McCrary's campaign had received two in-kind contributions worth approximately $105 for advertising and rent. The third page was the official “Form 5” used to list expenditures made by candidates. It indicated that McCrory had paid administrative and advertising expenses totaling $1,469.58.
 

 4. On August 28, two days after the election, McCrory filed a five-page report labeled “corrected copy.” It was prefaced by a notarized official “Summary Form 1” indicating that it was the “10-5 Day Pre-Election Report” and which indicated that McCrary’s campaign had: (1) a beginning balance of $1,100; (2) itemized cash contributions of $2,160; (3) in-kind contributions of $105; (4) no receipts from other sources; (5) expenditures of $1,469.58; and (6) an ending balance of $1,790.42. It also included a copy of the two-page Form 2 report previously filed on August 19 with the two contributions (totaling $1,100) that were also listed on the August 15 report crossed out with the notation “covered in last report” written next to them. This filing also included copies of the Form 3 and Form 5 filed on August 22.
 

 5.On September 8, McCrory filed another Summary Form 1 indicating that it was an “Amended Pre-Election Report” and which indicated cash contributions of $1,100.
 

 On August 26, the mayoral election was held. No candidate received a majority of the votes cast, however, and a runoff election between Sears and McCrory- — the two candidates receiving the most votes — -was scheduled for October 7, 2008. Following the runoff election, it was determined that McCrory had prevailed over Sears by a tally of 412 votes to 403 votes, and, on October 20, 2008, McCrory was certified as the winner of the election. That same day, Sears filed the instant election contest pursuant to § 11-46-69, Ala.Code 1975,
 
 [3]
 
 alleging that McCrory was not qualified to be a candidate in the mayoral election because, Sears alleged, he had failed to file a proper financial-disclosure report between 10 and 5 days before the August 26 general election as required by § 17-5-8 of the FCPA. Sears accordingly argued that McCrary's certificate of election should be declared
 
 *1215
 
 void. Both parties thereafter moved for a summary judgment, and, on January 21, 2009, the trial court granted MeCrory’s motion and entered a summary judgment in his favor. The trial court subsequently denied a motion filed by Sears asking it to alter, amend, or vacate the judgment, and, on March 19, 2009, Sears filed his notice of appeal to this Court.
 

 II.
 

 The standard for reviewing a summary judgment is well settled:
 

 “This Court’s review of a summary judgment is de novo.
 
 Williams v. State Fatm Mut. Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Hodurski,
 
 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 West v. Founders Life Assur. Co. of Fla.,
 
 547 So.2d 870, 871 (Ala.1989).”
 

 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004).
 

 III.
 

 The only issue for us to decide in this case is whether McCrory complied with the requirement of the FCPA that candidates for public office file a financial-disclosure report between 10 and 5 days before the election in which they are a candidate.
 
 [4]
 
 Sears argues that § 17-5-8 of the FCPA requires each candidate to file a
 
 single
 
 report between 10 and 5 days before the election that includes: (1) complete and detailed information on all contributions and expenditures; (2) a summary statement of all receipts and expenditures for that calendar year; and (3) a notarized affidavit attesting that the report is true and complete. He also alleges that none of the reports filed by McCrory met this requirement. However, McCrory, quoting
 
 Bryan v. Hubbard,
 
 6 So.3d 491, 499 (Ala.2008), argues that “[t]he legislature’s primary purpose in enacting the FCPA was to
 
 *1216
 
 require candidates for public office in Alabama to disclose campaign contributions and expenditures before an election,” and, he argues, the reports he filed before the election, when considered together, did in fact provide complete and full disclosure of all contributions received and expenditures made.
 

 We agree with McCrory that the signed reports he filed before the August 26 election did provide the disclosure required by the FCPA. Those reports detailed every campaign contribution received and every expenditure made by McCrory, and any citizen desiring to review that information before the election could have had the opportunity to do so. The reports filed by McCrory after the election — on August 28 and September 8— did not disclose any previously unidentified contributions or expenditures; instead, they appear to be an attempt to clarify the previous filings and to summarize in one report all the information previously submitted.
 

 Of course, it is nevertheless true that the report filed by McCrory on August 22, which did contain new information regarding contributions and expenditures, and which was outside the between-10- and-5-day period before the election, was untimely. In
 
 Davis v. Reynolds,
 
 592 So.2d 546, 555-56 (Ala.1991), this Court considered a similar election contest in which a document required to by filed under the FCPA was filed by the candidate, but not within the period required by the FCPA. We stated:
 

 “The [FCPA] was enacted by the Legislature in 1988. Its primary laudable purpose was to require candidates for public office in Alabama to disclose campaign contributions and expenditures prior to elections. It repealed parts of the Corrupt Practices Act, § 17-22-1 et seq., [Ala.Code 1975,] which required disclosure only after the election. To accomplish this purpose, the legislature included sanctions for violation of the statute. For a failure to file a statement required by the statute prior to the election, § 17-22A-21 [now § 17-5-18] provides the harshest penalty of all:
 

 “ ‘A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this Chapter.’
 

 “Thus, any candidate who fails to file a statement that is required to be filed by the [FCPA], prior to the election for the purpose of informing the voting public of the sources of his contributions and the subject of his expenditures, shall forfeit the election.
 

 “For the candidate who does not fail to file a statement before the election, but who files such a statement late, § 17-22A-22(b) [now § 17-17-35(b) ] prescribes and applies punishment in the form of a criminal penalty.
 

 “These two distinct sanctions, forfeiture of the election for those candidates who fail to file the disclosure statements required by the statute prior to the election, and criminal fines for candidates who file such disclosure statements prior to the election but not within the time prescribed by the statute, carry out the legislative intent of full disclosure before the election; but these sanctions do not require a candidate who discloses his contributions and expenditures before the election (but not within the time provided by the statute) to forfeit the election. That sanction is too harsh to visit upon a candidate who has not failed to file the statements required, but has merely filed them late. After all, this candidate is the candidate chosen by the people as their representative, even
 
 *1217
 
 though his disclosure statement was filed untimely. The people’s choice should prevail even if the candidate is in violation of the time constraints of the statute, if he files his disclosure statements prior to the election.
 

 “A fair reading of the [FCPA] leads one inescapably to the conclusion that the Legislature made a clear distinction between penalties that would apply to those candidates who fail to file disclosure statements and those candidates who merely file them late. It is not surprising that it did so. It was designed to differ from the Corrupt Practices Act, which provided only the harsh sanction of removal of the candidate’s name from the ballot. The purpose of the [FCPA] is to aid the voting public in choosing its state and county officials. Its purpose is not to deny the voting public its choice of representative, even if he or she has failed to meet a statutory deadline for filing disclosure statements, so long as he or she nevertheless has filed the statements prior to the election.
 

 [[Image here]]
 

 “The [FCPA] marks a new day in Alabama campaign practices. It requires full and complete disclosure by all candidates for public office of the sources of all contributions and the subject of all expenditures. It requires this disclosure prior to the election. If it is not made before the election, the candidate may not be certified to the office if he wins the election, § 17-22A-21 [now § 17-5-18]. It requires this disclosure shortly after one becomes a candidate. If it is not made within the time required, but before the election, the candidate is subject to the penalties provided by § 17-22A-22(b) [now § 17-17-35(b) ]. Its purpose is to inform the voting public of the source of a candidate’s financial support. This purpose is served by the sanctions provided for in the Act. This Court has no authority to enlarge the sanctions provided for in the legislation itself.”
 

 (Footnote omitted.) Thus, like the candidate in
 
 Davis,
 
 McCrory was “a candidate who disclosefd] his contributions and expenditures before the election (but not within the time provided by the statute).” 592 So.2d at 555. He did therefore violate the FCPA; however, we have held that “[t]he people’s choice should prevail even if the candidate is in violation of the time constraints of the statute, if he files his disclosure statements prior to the election.” 592 So.2d at 555. Accordingly, Sears was not entitled to the relief he sought — the revocation of McCrory’s certificate of election — and the trial court properly entered judgment in favor of McCrory.
 
 [5]
 

 IV.
 

 Sears initiated this action by filing a complaint alleging that McCrory was not qualified to be a candidate in the August 2008 mayoral election for Montevallo because, Sears alleged, McCrory did not timely file a financial-disclosure report as required by § 17-5-8 of the FCPA. However, because McCrory did in fact disclose before the election all the information required by the FCPA, albeit outside the period mandated by § 17-5-8, he was nevertheless eligible for that election, and the certification of election he subsequently received after garnering the most votes in the runoff election is valid.
 
 Davis,
 
 592 So.2d at 555-56. There is no genuine is
 
 *1218
 
 sue of material fact in this regard, and the summary judgment entered by the trial court is accordingly due to be affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS and BOLIN, JJ., concur.
 

 MURDOCK, J., concurs in the result.
 

 [1]
 

 . Section 17-5-8(a) was amended effective August 1, 2009. The time periods remain unchanged.
 

 [2]
 

 . Section 17-5-4 states:
 

 “Within five days after any person becomes a candidate for office, such person shall file with the Secretary of State or judge of probate, as provided in Section 17-5-9, a statement showing the name of not less than two nor more than five persons elected to serve as the principal campaign committee for such candidate, together with a written acceptance or consent by such committee, but any candidate may declare himself or herself as the person chosen to serve as the principal campaign committee, in which case such candidate shall perform the duties of chair and treasurer of such committee prescribed by this chapter.”
 

 [3]
 

 . Section 11-46-69 states:
 

 “(a) The election of any person declared elected to any office of a city or town may be contested by any person who was at the time of the election a qualified elector of such city or town for any of the following causes:
 

 [[Image here]]
 

 "(2) The person whose election to office is contested was not eligible thereto at the time of such election....”
 

 [4]
 

 . Before the trial court, McCrory had argued that the election contest filed by Sears was untimely because Sears did not file it immediately after the general election but instead waited until after the runoff election. The trial court did not state its rationale for entering a summary judgment in favor of McCrory, and Sears has accordingly devoted a portion of his appellate brief to the argument that this action was timely filed. However, on May 15, 2009, after the trial court entered its judgment in this case, this Court released its opinion in
 
 Smith v. Burkhalter,
 
 28 So.3d 730, 735 (Ala.2009), in which we clarified that an election contest cannot be filed until after a candidate is “declared elected.” Thus, Sears would have been unable to file an election contest before the runoff election was held and a winner declared; accordingly, this election contest was timely filed. In his brief to this Court, McCrory acknowledges the holding of
 
 Smith
 
 and that the only issue for our review is whether he complied with the FCPA.
 

 [5]
 

 . Although McCrory’s untimely filing may subject him to criminal penalties under § 17-17 — 35(b), Ala.Code 1975, those penalties cannot be sought or imposed in a civil action brought by a private citizen such as Sears.